310 Ga. 224
FINAL COPY

S20A0939.  JACKSON v. THE STATE.

BOGGS, Justice.

In this out-of-time appeal, Appellant Antwan Antonio "Rico" Jackson challenges his 2010 convictions for felony murder and attempted cocaine trafficking in connection with the shooting death of Christopher L. Hoskin. Appellant contends that the evidence was insufficient to support his convictions; that the trial court erred in failing to quash the two counts of the indictment on which he was convicted; that the court erred in allowing the State in closing argument to denigrate defense counsel and to vouch for a prosecution witness; and that the court committed plain error in failing to instruct the jury that a sentence of life imprisonment was mandatory if the jury found him guilty of either of two murder charges.

As explained below, the evidence was legally sufficient to support Appellant's convictions, but the trial court erred in entering

a judgment of conviction and sentence on the guilty verdict for attempted cocaine trafficking, which merged into the related felony murder conviction. Appellant failed to preserve for appellate review his claims relating to the indictment and the State's closing argument by not raising them at the appropriate time in the trial court, and we have previously held that it is not plain error for a trial court not to charge the jury that a sentence of life imprisonment is mandatory if the jury finds the defendant guilty of either malice murder or felony murder. Accordingly, we vacate Appellant's conviction and sentence for attempted cocaine trafficking, but we otherwise affirm the trial court's judgment.[1]

---

[1] Hoskin was killed on February 19, 2007. On March 23, 2009, a Chattahoochee County grand jury indicted Appellant and Dantrelle Prince for malice murder, felony murder based on attempted cocaine trafficking, aggravated assault with a deadly weapon, and attempted cocaine trafficking and indicted Tashcha Grant for felony murder based on attempted cocaine trafficking and attempted cocaine trafficking. The State agreed to allow Prince and Grant to plead guilty to attempted cocaine trafficking and to dismiss the other charges against them in exchange for their truthful testimony against Appellant, with the entry of their guilty pleas and sentencing deferred until after Appellant's trial. At a trial from April 26 to 29, 2010, the jury acquitted Appellant of malice murder and aggravated assault with a deadly weapon and found him guilty of felony murder and attempted cocaine trafficking. The trial court sentenced Appellant to serve life in prison for felony murder and a

1. "It is incumbent upon the Court to question its jurisdiction in all cases in which jurisdiction may be in doubt." *Woods v. State*, 279 Ga. 28, 28 (608 SE2d 631) (2005). The State contends that we lack jurisdiction to decide this appeal based on our recent decision in *Pounds v. State*, 309 Ga. 376 (846 SE2d 48) (2020), where we held that an untimely motion for new trial that the trial court improperly denied on the merits (rather than dismissing as untimely) ripened on the grant of an out-of-time appeal, making any appeal premature until the trial court disposed of the newly timely motion for new trial. We explained:

> [B]ecause a trial court order denying a late-filed and untimely motion for new trial on the merits is, and remains, invalid when an out-of-time appeal is granted, the motion for new trial itself — which becomes ripe,

concurrent term of 15 years for attempted cocaine trafficking, both consecutive to a life sentence that he already was serving for armed robbery. Appellant obtained new counsel and, on June 10, 2010, filed an untimely motion for new trial. Appellant again obtained new counsel and amended his new trial motion on April 14, 2016, and May 26, 2016. On January 29, 2019, the trial court "denied" the motion after finding that it was untimely; the court's order did not address the merits of the motion. Appellant obtained new counsel yet again and, on October 10, 2019, filed a motion for out-of-time appeal, which the trial court granted on January 7, 2020. On February 5, 2020, Appellant filed a notice of appeal that was timely from the order granting him an out-of-time appeal. The case was docketed in this Court to the April 2020 term and submitted for a decision on the briefs.

3

> though it was initially late-filed — remains pending because no court has issued a valid legal judgment resolving it. And because the motion for new trial is pending, any notice of appeal to an appellate court has not yet ripened, . . . and absent an applicable exception such as an interlocutory appeal as provided in OCGA § 5-6-34 (b), any appeal must be dismissed.

*Pounds*, 309 Ga. at 381-382 (citation, punctuation and emphasis omitted). For present purposes, the key to our holding in *Pounds* is the phrase "on the merits," a term that the opinion repeated no less than a dozen times.

Here, although the trial court said in its January 2019 order that Appellant's motion for new trial was "denied" rather than "dismissed," the order included an express finding that the motion was untimely and did not address the merits of the new trial motion. The court's order was, in substance, an order dismissing Appellant's new trial motion as untimely, not an order denying the motion on the merits. See *Brooks v. State*, 301 Ga. 748, 752 (804 SE2d 1) (2017) ("[A] trial court's mere 'denial' of a motion it lacks jurisdiction to decide without more cannot be assumed to be a decision on the merits . . . ."). See also *First Christ Holiness Church, Inc. v. Owens*

4

*Temple First Christ Holiness Church, Inc.*, 282 Ga. 883, 885 (655 SE2d 605) (2008) ("[T]he appealability of an order is determined, not by its form or the name given to it by the trial court, but rather by its substance and effect."). The court's January 2019 order, which was issued prior to the grant of an out-of-time appeal in January 2020, validly disposed of Appellant's new trial motion. See *Pounds*, 309 Ga. at 381 ("[D]ismissal of an untimely motion is the proper disposition for a late-filed motion for new trial . . . ."). As a result, there is no motion for new trial pending in the trial court. Accordingly, we reject the State's jurisdictional challenge.

2. (a) Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. Tashcha Grant knew Hoskin from her time living in Phenix City, Alabama, where Hoskin also lived, and Grant and her boyfriend Dantrelle Prince had purchased crack cocaine and marijuana from Hoskin in the past. Prince and Appellant had been friends for six or seven years, and on February 18 and 19, 2007, Prince talked to Appellant about buying drugs from Hoskin. Prince told Appellant that he got a "better deal"

from Hoskin than Appellant had been getting from other drug dealers. On the afternoon of February 19, Grant contacted Hoskin for Prince and Appellant and allowed them to use her cell phone to arrange to purchase a large amount of cocaine from Hoskin. Hoskin asked Prince to come with Appellant and to bring Grant's cell phone, because Hoskin did not want too many people to have his number.

Later that night, Prince and Appellant left to meet Hoskin near Cusseta, Georgia. Hoskin led them to a house off Highway 27, but there were numerous cars there, so Appellant used Grant's cell phone to call Hoskin and arrange a new meeting place on Gatford Road just off Highway 27. Prince passed Appellant a bag with $4,000 in cash to buy the cocaine and waited in the car while Appellant approached Hoskin's Ford Expedition. Prince heard conversation between Appellant and Hoskin and then multiple gunshots. Appellant ran back to the car, got in, and sped away, telling Prince that he thought that Hoskin was reaching for a gun, so he "shot [Hoskin] through the truck and started running, shooting back." Appellant said that he fired first and that Hoskin never got to his

gun. Appellant asked "if he had to worry about [Prince] snitching on him," and Prince said no. Prince told Grant when he got home that Appellant shot Hoskin.

At 10:17 p.m., officers responding to a report of an accident found Hoskin lying across the front seat of his SUV with gunshot wounds to his chest and left forearm and no pulse. There were bullet marks on the hood and windshield. Inside the SUV, officers found Hoskin's wallet, two cell phones, and a small amount of crack cocaine, but no firearms, shell casings, or bullets. Officers canvassed the scene and found six shell casings and two clear plastic bags of what appeared to be crack cocaine on Gatford Road. A GBI forensic chemist later determined that the substance in the plastic bags weighed 93.47 grams and was 46.4% pure cocaine.

The morning after the shooting, Prince and Grant went to Prince's father's house. While they were there, Appellant drove up to the house, threw up his hands, and stated, "I had to do it." Appellant said that he thought that Grant had set him up to be robbed and that Grant was the only person "that could get him

caught up on this charge." Appellant then threatened to "burn" Grant or "take [her] out if [she] would say anything or told," and Prince's father assured him that Grant would not provide any information against him. Appellant later told Tameika Tarver and Christopher McClendon that he shot Hoskin. Three or four days after the shooting, Appellant and Prince fled to Texas to avoid law enforcement.

Appellant contends that the evidence was insufficient to support his convictions under the federal due process standard. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). When properly viewed in the light most favorable to the verdicts, however, the evidence presented at trial and summarized above was sufficient as a matter of constitutional due process to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See id. See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation

8

omitted)).

(b) Appellant also contends that the evidence was insufficient to support his convictions under former OCGA § 24-4-6, which said: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[2] However, this doctrine applies only where the State's case against the defendant was "'wholly circumstantial,'" *Hill v. State*, 297 Ga. 675, 678 (777 SE2d 460) (2015) (citation omitted), and here, the State did not rely solely on circumstantial evidence. There was substantial direct evidence in the form of not only Prince's and Grant's testimony about Appellant's arranging to purchase a large amount of cocaine from Hoskin and going to meet him to complete the transaction, but also Appellant's admissions to Prince, Grant, Tarver, and McClendon that he shot Hoskin. Appellant disputes the credibility of their testimony, but direct

---

[2] The old Evidence Code applied to Appellant's 2010 trial. Former OCGA § 24-4-6 was carried forward into the new Evidence Code as OCGA § 24-14-6.

9

evidence is not converted into circumstantial evidence by a witness' lack of credibility. See id. Moreover, taken as a whole, the circumstantial evidence the State presented was sufficient for the jury to reject any other reasonable theory save that of Appellant's guilt for attempted cocaine trafficking and felony murder based on attempted cocaine trafficking. Thus, Appellant's statutory challenge to the sufficiency of the evidence is meritless.

(c) Although the evidence was legally sufficient to support Appellant's convictions, we have noticed an obvious merger error that harms Appellant and therefore should be corrected. See *Dixon v. State*, 302 Ga. 691, 696-697 (808 SE2d 696) (2017) (noting this Court's discretion to correct merger errors sua sponte and stating that "[t]here are powerful reasons to exercise that discretion when a merger error leads to an unauthorized conviction and sentence"). As noted in footnote 1 above, the jury found Appellant guilty of both attempted cocaine trafficking and felony murder based on attempted cocaine trafficking, and the trial court entered judgments of conviction on both guilty verdicts, sentencing Appellant to serve

10

concurrent terms of life in prison for felony murder and 15 years for attempted cocaine trafficking. However, "where, as here, the defendant is found guilty of both felony murder and the underlying felony, that underlying felony merges into the felony murder conviction." *Higuera-Hernandez v. State*, 289 Ga. 553, 554 (714 SE2d 236) (2011) (citation and punctuation omitted). We therefore vacate Appellant's conviction and sentence for attempted cocaine trafficking. See id.

3.    Appellant contends that the trial court erred in failing to quash the counts of the indictment charging him with attempted cocaine trafficking and felony murder based on attempted cocaine trafficking and in allowing the State in closing argument to denigrate defense counsel and to vouch for a prosecution witness. However, Appellant did not raise these claims in the trial court at the appropriate time, and he therefore failed to preserve them for appellate review.

The indictment charged Appellant with attempted cocaine trafficking in violation of OCGA § 16-13-31 (a) (1) for

> knowingly and intentionally perform[ing] an act constituting a substantial step toward the commission of said crime [i.e., cocaine trafficking], to wit: used Tashcha Grant's telephone to contact . . . Hoskin . . . to arrange the sale of a quantity of cocaine, agreed to meet, and did meet . . . Hoskin, . . . to purchase a quantity of cocaine. . . .

The indictment also charged Appellant with felony murder for causing Hoskin's death "while in the commission of a felony, to wit: criminal attempt[ed] trafficking in cocaine." Appellant claims that the trial court should have quashed the attempt count and the related felony murder count, because the attempt count alleged that he "arrange[d] the sale of a quantity of cocaine" but did not specify who the sale was to or from or when or where the sale was to take place. This claim is a challenge to the form of the indictment, which Appellant waived by failing to raise it before trial in a timely filed special demurrer. See *Miller v. State*, 305 Ga. 276, 280-281 (824 SE2d 342) (2019) ("To the extent that Miller argues that the indictment should have been more specific as to the timing in which the offenses were committed, such an argument amounts to a special demurrer. Such an argument must be brought before trial, or it is

12

waived." (citation omitted)).[3] Thus, this claim is "not properly before this Court" for review. *Bennett v. State*, 301 Ga. 874, 878 n.4 (804 SE2d 360) (2017).

The same is true of Appellant's complaints regarding the State's closing argument. The prosecutor argued to the jury, "[T]hat's the job of a criminal defense attorney[,] to take the truth and to shape it," and later said, referring to Tarver's testimony, "It's not fabricated. She came in and she told you what she know[s]." Appellant claims that the trial court erred in permitting these arguments, which he argues improperly denigrated defense counsel and expressed the prosecutor's personal belief in Tarver's credibility. But because Appellant "did not object to the prosecutor's argument at trial, he has waived review of these arguments on appeal, as the alleged errors here based on improper remarks during closing argument are not subject to review on appeal for plain error."

---

[3] See also OCGA §§ 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."), 17-7-113 ("All exceptions which go merely to the form of an indictment or accusation shall be made before trial.").

*Gates v. State*, 298 Ga. 324, 328 (781 SE2d 772) (2016). See also *Corley v. State*, 308 Ga. 321, 326 (840 SE2d 391) (2020) ("Corley did not object to these comments [i.e., the prosecutor's allegedly improper comments to the jury] at trial, so this enumeration of error is not properly before our Court for review.").

4.    Finally, Appellant contends that the trial court committed plain error in failing to instruct the jury that a sentence of life imprisonment was mandatory if the jury found him guilty of either murder charge. However, we have repeatedly held that it is not plain error for a trial court not to charge the jury that a sentence of life imprisonment is mandatory if the jury finds the defendant guilty of either malice murder or felony murder. See, e.g., *Willis v. State*, 304 Ga. 781, 785 (822 SE2d 203) (2018). Accordingly, this claim lacks merit.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Warren, J., not participating.*

Decided October 19, 2020.

Murder. Chattahoochee Superior Court. Before Judge Peters.

*Wilbur J. Wilson*, for appellant.

*Julia F. Slater, District Attorney, Benjamin E. Gephardt, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth R. Rosenwasser, Assistant Attorney General,* for appellee.